BRADLEY T. JOHNSON and JANE C. JOHNSON, his
   Wife, *vs.* BARBARA ROBERTSON and JAMES W.
   PEARRE.

*Effect of notice by Publication upon Defendants
   within the Confederate lines during the war —
   Rights of a Purchaser under a Decree of fore-
   closure, when the Decree is subsequently Vacated.*

Upon proceedings to foreclose a mortgage, instituted during the war
   within the Federal lines, notice was given by publication in a news-
   paper to the mortgagors, who were within the Confederate lines, one
   of them being an officer in the Confederate army.   Upon their failure
   to appear and answer a decree *pro confesso*, was entered against them,
   the property sold, the sale finally ratified and confirmed, and the terms
   of sale were complied with by the purchaser.   After the war the defend-
   ants were allowed to appeal upon the alleged ground of a recent dis-
   covery of mistake in the decree.   On this appeal, the Appellate Court,
   without either reversing or affirming the decree appealed from, remanded
   the cause that the necessary proof of the notice by publication to the
   defendants as non-residents, might be supplied.   After the cause was
   remanded, the defendants applied to be allowed to file their answer and
   defend against the final decree, contending that they were not non-
   residents of the State, and had never been legally notified of the pro-
   ceedings against them.   The requisite proof of notice by publication to
   the defendants was furnished.   On appeal from a refusal to allow them
   to appear and answer, it was HELD:

1st.  That as the first decree was entirely displaced by the order of the
   Appellate Court, the cause was still open for final decree, and at any
   time before such decree, the defendants, who were proceeded against as
   non-residents, were entitled to appear and answer on such reasonable
   terms as the Court below might prescribe.

2d.  That the notice by publication to the defendants while absent within
   the Confederate lines, was ineffectual to bind them, and the sale of the
   mortgaged property was therefore null and void.

Where, under a decree of foreclosure, the mortgaged property is sold, and
   the sale finally ratified and confirmed, and subsequently on appeal the
   decree is vacated, and the mortgaged property decreed to be sold again
   for the payment of the mortgage debt, the original purchaser, if he has

Johnson and Wife *vs.* Robertson and Pearre.

paid the purchase money, and it has been applied to the payment of the mortgage debt, is entitled to be subrogated to the mortgagee, and to have the mortgage treated as assigned to him.

APPEAL from the Circuit Court for Frederick County.

The cause was argued before BARTOL, C. J., BRENT, GRASON, MILLER, ALVEY and ROBINSON, J. ·

*John P. Poe* and *Joseph H. Bradley, Sr.,* for the appellants.

The former decree and the sale made thereunder, are null and void—because, at the time the bill was filed, notice by publication attempted to be given, decree passed and property sold, the Circuit Court had no jurisdiction and could not lawfully acquire jurisdiction over the appellants, who were at the time within the military lines and territorial limits of the Confederates. During this whole time all communication with them, including that by publication, was expressly prohibited by the Act of Congress, passed 13th of July, 1861, and by the President's proclamation of August 16th, 1861, issued in conformity with such Act. Accordingly, under the provisions of such Act and proclamation, they " could not lawfully see nor obey " the notice by publication, and are at liberty to treat the decree and sale as utter nullities. *Dean vs. Nelson,* 10 *Wallace,* 158.

But apart from this, the appellants were entitled to appear · and answer, and should have been allowed to do so. *Code of Public General Laws, Art.* 16, sec. 97; *Art.* 5, sec. 28; *Dennis vs. Dennis,* 15 *Md.,* 76.

The former decree having in so many words been decided by this Court not to be final, and the case in the lower Court standing as if it had never been passed, the appellants were clearly entitled to appear and answer, on such reasonable terms as the Court might prescribe.

*George A. Pearre,* for the appellees.

The appellants should not be permitted now to answer.

1st. Because of the existence of the decree, which must stand for what it purports to be until regularly reversed or reviewed. *Estep vs. Watkins,* 1 *Bland,* 489; *Pfeltz vs. Pfeltz,* 1 *Md. Ch. Dec.,* 455.

2d. The decree of the Court of Appeals remanded the cause "to the end that further proof may be taken and further proceedings had in accordance with the opinion accompanying this decree." The opinion says that the case is remanded that further evidence may be taken of the publication of the order and notice to the non-residents, and that further proceedings may be there had in accordance with the opinion of this Court. The only purpose for which, by the decree and opinion, (for the former refers to the latter,) the cause was remanded, is to take the proof as to the publication of notice to the non resident defendants; and then the opinion declares what shall be done in case the proof is furnished, viz: a re-affirmance of the decree, and if *not furnished then* Johnson and wife may answer. The opinion of the Court of Appeals is the law of the case, and the proceedings below, when the cause is remanded, cannot travel out of the sphere limited by the decree of the Court of Appeals.

The Appellate Court specifies the object and purpose for which the case is remanded. *Last clause of the opinion of the Court,* 3 *Gill,* 82, 83; 8 *Md.,* 1–4; *Young vs. Frost,* 1 *Md.,* 395, 396; *Williams vs. Banks,* 19 *Md.,* 22; *Code of Public General Laws, Art.* 5, *sec.* 28.

3d. The decree in this case being enrolled, it cannot be opened by *petition. Pfeltz vs. Pfeltz,* 1 *Md. Ch. Dec.,* 455.

The question of due publication has been decided on, and proof furnished. The other allegation that they had no notice and no opportunity to defend is immaterial. They had the notice by publication which the law substitutes for the summons and actual notice. A further allegation is that they were not non-residents when the bill was filed and decree obtained. This allegation the appellees deny in point of fact, but if true, the decree could not be opened upon *petition,* even if a bill of review would lie for such reason.

But if the appellants were not in fact non-residents, the decree would be a nullity—*void*, as the petition says it is. If so they need no relief in equity, as there is an ample remedy at law. Ejectment will reach the case, and they could show the proceeding void. *Last clause,* 1 *Bland,* 558 ; 7 *Gill,* 429, 434; 16 *Md.,* 171 ; 1 *Peters,* 340 ; 28 *Md.,* 284.

But what was the fact as to the question of residence? They are precluded by their affidavit for appeal, in which they state their absence from the State, and that no process or notice was ever served on them, or could be. Having obtained the benefit of the appeal upon this affidavit, they are estopped to deny any fact therein stated. 10 *Md.,* 280.

Under our Chancery Laws, Code, Article 16, section 88, the simple word is "non-resident," without regard to citizenship or domicil. By section 92, even a resident who keeps out of the way, upon two *non ests,* may be proceeded against as a non-resident.

The right secured to a non-resident to appear and answer by Article 16, section 97, refers only to cases where there has been no final decree at all ; and not to cases where there has been a final decree and an appeal taken, and the case remanded under the Act of 1832, chapter 302.

In this case the Court of Appeals do not declare the decree erroneous, but say it will be void, if the order of publication was *not* published ; if it was, it is a good decree. The effect of the decree remanding, is merely to suspend the decree until the proof is furnished, and then the Court below is to declare, upon the furnishing the proof, that it is proved and the decree is good, not to pass a new decree, but to ratify the old one. Under the Act of 1832, the case is not to be opened in *toto,* but only to such extent as the Court of Appeals by its opinion and decree shall define.

By the terms of the Act of 1832, the decision of the Court of Appeals, pronounced in the case, is made " conclusive" as to the points finally decided, and no error can be imputed to the Court below, if its subsequent proceedings have been in

conformity with that decision. *Williams, et al. vs. Banks, et al.,* 19 *Md.,* 22.

ALVEY, J., delivered the opinion of the Court.

This case has been in this Court on a former occasion, on the appeal of the present appellants, (31 *Md.,* 476,) but the questions raised and decided then were quite different from those raised on the present appeal. The former appeal was taken from the original decree of sale, of the 4th of April, 1862, which was passed upon taking the bill of complaint *pro confesso* against the appellants, on what was supposed to be sufficient evidence of the publication of notice against them as non-resident defendants. That appeal was allowed upon the alleged ground of recent discovery of mistake in the decree; and the only questions properly presented on the record were, first, whether the decree was not defective because no day was given by it to the defendants within which to pay the mortgage debt and costs; second, whether the appellants were so far necessary parties to the proceeding that no decree of sale could rightfully be passed in their absence; and third, whether the evidence furnished of the publication of the order against them, as non-resident defendants, was sufficient.

Before the former appeal was taken, the mortgaged property had been sold under the decree, and the sale ratified and confirmed, to one of the present appellees, James W. Pearre, and he had complied with the terms of sale. This was apparent from the record; but the purchaser himself was not a party to that appeal, as he is to the present.

In disposing of the questions presented on the former appeal, this Court decided, that the decree appealed from was not, under the circumstances of the case, and in view of the submission to the passage of the decree by the trustee, erroneous in omitting to give a day to the defendants within which to pay the debt; and that the appellants were necessary parties to the cause to authorize a decree for the sale of the mortgaged premises. But, as to the other question mainly relied

on for reversal, the Court, on the then condition of the record, was of opinion that the evidence was not sufficient to establish the fact of due publication of the notice to the appellants as non-residents. It being, however, suggested, that full and ample proof could be furnished, this Court deemed it right and proper, and especially with a view to the protection of the purchaser, that the cause should be remanded, in order to enable the parties interested in maintaining the decree, to supply the necessary proof. To that end the cause was remanded, under the Code, Article 5, section 28. And in the conclusion of the opinion of the Court it was said, that in case the proof of the publication of the notice should be supplied, it would be competent for the Court below to pass a decree ratifying and confirming its former decree, and thus protect the rights of the purchaser. But, if such proof should not be supplied, then the cause would stand as if no decree had passed, and the appellants would be allowed to appear, answer and defend the cause, and further proceedings should be had therein according to the usual course.

Having thus disposed of the questions presented, on remanding the cause, without either reversing or affirming the decree appealed from, the appellants made application by petition to be allowed to file their answer, and to defend against a final decree, contending that they were not non-residents of the State, as alleged in the bill, and, as they had never been legally notified of the proceedings against them, that the decree which had been passed, directing the sale of the mortgaged property, was without jurisdiction to support it, and therefore void. The purchaser of the property also made application to become a party to the cause, in order the better to protect his interest, which was allowed. And, on becoming a party, he, together with the original complainant, proceeded to supply the proof of the due publication of the notice to the appellants, which they succeeded in doing. Whereupon, they resisted the right of the appellants to appear and answer the bill; insisting that by the decree of this Court, remanding

the cause, the only thing left open for inquiry in the Court below was the fact of the due publication of the notice to the non-resident defendants, and upon proof of that fact being supplied, the original decree as passed was to be finally ratified and confirmed, and all the rights of the purchaser thereunder protected. They also denied that the appellants were not non-residents of the State when the suit was instituted, and the original decree passed, and insisted that the latter were concluded as to that fact by their allegation in their petition for the right of appeal, wherein they alleged that they were, at the time of the institution of the suit, and continuously up to the close of the war, within the Confederate lines, and that one of the appellants was, during the whole period of the war, an officer in the Confederate service.

The proof of publication of the notice to the appellants, as non-resident defendants, being supplied, the Court below, by its order of the 31st of May, 1870, dismissed the application of the appellants for leave to appear and answer, and "further adjudged, ordered and decreed, that the former decree in this cause, and the sale made and reported by said trustee to said purchaser, and the rights of said purchaser acquired under said sale, be and the same are hereby fully and finally ratified and confirmed." It is from this order or decree that the present appeal is taken. And the first question that arises is, what was the effect of the order of this Court remanding the cause to the Court below without either reversing or affirming the original decree of sale.

It is contended on the part of the appellees, that, by the proper construction and effect of the order, the appellants' right to appear and answer was excluded, except in the event that due proof was not produced of the publication of the notice; and, perhaps, it is susceptible of that construction, taken in connection with the concluding sentences of the opinion to which it refers. But the terms of the opinion were founded in the fact that we did not anticipate that there would be other questions raised as to the validity of the

original decree than those that were decided, and in supposing that, upon the defective proof being supplied, no further proceedings would be necessary to sustain the decree. It is to be regretted, however, that we were not more guarded in the language employed; for, by the Code, Article 5, section 28, when a cause is remanded without either reversing or reaffirming the decree or order appealed from, such further proceedings are to be had in the Court below, either by amendment of pleadings or further testimony to be taken, or otherwise, "as shall be necessary for determining the cause upon its merits, *as if no appeal had been taken in the cause, and the decree or order appealed from had not been passed,* save only that the order or decree passed by the Court of Appeals shall be conclusive as to the points finally decided thereby." The only points decided on the former appeal, having reference to the correctness and validity of the decree appealed from, were those we have stated; and we by no means intended to decide as to the appellants' right to appear and answer. No such application had been made, and no such question was before us. When the cause was remanded under the order, it stood in the Court below as it did before the decree appealed from was passed. And as the appellants were proceeded against as non-resident defendants, it was their right, under the Code, Article 16, section 97, to appear and answer at any time before final decree, on such reasonable terms as the Court below might prescribe. As the first decree was entirely displaced by the order of the Court of Appeals, the cause was still open for final decree at the time of the appellants' application to answer. Until the proof was supplied, and the order ratifying and confirming the former decree was passed, the right of the appellants to appear and answer existed. Of this right they could not be deprived.

But, though the effect of the order remanding the cause was to reinstate it in the Court below as if no final decree had ever passed, still, upon the assumption of the existence of competent jurisdiction over the parties, and the subject matter

involved, whatever had been done under and in strict execu-
tion of the decree appealed from, before the order remanding
the cause, would be valid and binding as between the parties
to the cause and all third persons. The reversal of the decree
could not have had a retrospective operation to render null
and void things properly done under it while in force, nor can
an order remanding the cause, although it displaces the decree
as if it had never been passed, have such effect. The rights
of the purchaser therefore would be protected, as having been
acquired under competent judicial authority, notwithstanding
the decree under which the sale was made was subsequently
vacated by the order of the Court of Appeals. If, however,
the decree under which the purchaser's rights were acquired
be not merely voidable for errors on a direct appeal, but abso-
lutely void *ab initio*, for want of jurisdiction in the Court to
pass it, and is consequently liable to be called into question in
any collateral proceeding, a very different question arises.
And this brings us to the question, whether the rights of the
purchaser under the original decree, having been finally rati-
fied and confirmed by the order or decree from which the
present appeal is taken, in view of the allegations made by
the respective parties, can be upheld and sustained.

It is distinctly alleged, on the part of the appellants, that
they were, during the whole period of the war, and, conse-
quently, at the time of the institution of this suit and the
passage of the decree of sale, within the Confederate lines,
and that one of them was an officer in the Confederate army.
These allegations are relied on by the appellees as evidence
conclusive of the fact of non-residence of the appellants;
and assuming them to be true, what is the effect on the ques-
tion of jurisdiction of the Court to pass the decree, on the
notice that was given, authorizing and directing the sale of
the mortgaged property ?

When this case was here on the former appeal, this ques-
tion was raised in argument, but not being properly presented
by the record, it was not expressly decided in this particular

case. The case of *Dorsey vs. Dorsey*, 30 *Md.*, 522, was referred to in the opinion of the Court, in which the question had been previously decided, and in that case, this Court held, upon what was supposed to be good and satisfactory ground, that the notice by publicalion, duly given, was sufficient to maintain the jurisdiction of the Court in ordering and ratifying the sale of mortgaged property, as against the mortgagor, who had, up to the time of the commencement of the war, been a resident citizen of the State, and who voluntarily absented himself and remained within the Confederate lines during the war. But since that decision, the question has arisen in the Federal tribunals, and has been decided differently. In the case of *The Kanawha Coal Company vs. The Kanawha and Ohio Coal Company*, recently decided in the United States Circuit Court for the Southern District of New York, publication, as a means of notice to parties within the Confederate lines, was expressly decided to be ineffectual to bind them. And in the still more recent case of *Dean vs. Nelson and May*, in the Supreme Court of the United States, reported in 10 *Wallace*, 158, it was held, that the equity of redemption of a mortgagor was not extinguished by proceedings to foreclose the mortgage during the war, when such proceedings were taken within the Union lines, whilst the defendants were absent in the Confederate lines; and, in regard to the notice to such absent defendants, by publication, the Court said : "A notice directed to them, and published in a newspaper, was a mere idle form. They could not lawfully see nor obey it. As to them, the proceedings were *wholly void and inoperative*."

Thus stands the question on these recent decisions; and while we should not hesitate to adhere to our own previous decision, were it not of a question of jurisdictional character, yet, in view of the possible conflict and embarrassment that may occur in regard to titles, when called collaterally into question in suits in the United States Courts, on the ground of defective jurisdiction, we deem it judicious to make our decision conform to that of the Supreme Court upon this subject.

We shall, therefore, reverse the order or decree appealed from, and remand the cause, that the appellants may appear and answer. And after they have appeared, of course, all proceedings necessary to obtaining a decree *de novo* may be taken ; and if it be established in proof that the appellants were within the Confederate lines as alleged, the sale heretofore made, will consequently be rendered null and void, and, thereupon, it will be competent to the Court below to decree the mortgaged property to be sold again for the payment of the mortgaged debt. In this latter event, the purchaser should be protected so far that if he has paid the purchase money, and it has been applied to the payment of the mortgage debt, or so far as he has paid and applied the purchase money, he should be subrogated to the mortgagee, and the mortgage, to the extent of such payment, treated as assigned to him. This plain justice and equity would seem to require.

*Order reversed and*
*cause remanded.*

(Decided 21st February, 1871.)

[The foregoing case was decided before the case of *Ludlow vs. Ramsey*, 11 *Wallace*, 581, which qualifies the previous case of *Dean vs. Nelson*, 10 *Wallace*, 158, upon the authority of which this Court rested their decision. It would seem that the Supreme Court in this latter case, has fully sanctioned, in accordance with former decisions of this Court, the principle of the liability of alien enemies to be sued, and to be bound by constructive notice when they voluntarily absent themselves from their homes.—REP.]